## HINCKLEY v. STEBBINS et al.

### No. 13,746; February 2, 1892.

29 Pac. 52.

**Decree of Distribution—Value of Items.**—Where a decree of the probate court distributed to certain trustees the legal title to an undivided one-third of certain property, "that is to say, . . . . one-third of the aggregated value of all the six items hereinafter specified," and contained a statement of such items, together with the amounts thereof, the values of the various items were thereby fixed.

**Probate of Will—Litigation Over Charity—Attorney Fees.**— Where a testator leaves a portion of his estate to a charity, and the charity engages in litigation involving the construction of the will, its attorneys' fees will not be chargeable against the whole estate, but only against the portion devised to it.

APPEAL from Superior Court, City and County of San Francisco; William T. Wallace, Judge.

Action by Mary C. Hinckley against Horatio Stebbins and others, trustees. From the final decree of the court, dividing certain trust funds, plaintiff appeals. Reversed.

William Barber for appellant; C. K. Bonestell for respondents.

FOOTE, C.—This suit was brought by the plaintiff, as residuary legatee under the will of William C. Hinckley, deceased, against the defendants, for the purpose of securing an accounting, procuring the sale of certain property, the payment of certain unpaid legacies out of the proceeds of that sale, and to obtain a division of the balance left in their hands between the residuary legatee and some of these defendants, as trustees of a certain charity. There had been a contest as to the construction of this will, and what proportion of the estate was to be distributed to the parties here, and this court, in 58 Cal. 517, adjudicated the matters there involved, and ordered a probate court decree of distribution to be made, modifying a previous one made on the 10th of March, 1879, which decree, modified as directed by the appellate court, was

made and entered on the 22d of May, 1882. This last decree has never been appealed from, and is in full force and effect. It is prayed in the complaint that the California Theater property, which had been by that decree distributed to certain of the defendants here, in trust for certain purposes, should be sold, and that from the proceeds of that sale, and any money remaining in the hands of these trustees derived from rents and profits of the theater property, should be paid certain twelve specific legacies, of $3,000 each. The answer of the legatees agrees to this prayer, and so does the answer of the trustees. Upon this state of affairs an interlocutory decree was entered, following this agreement. After that, upon findings of fact and conclusions of law filed by the trial court, a final decree was made and entered, dividing the remaining trust funds between the trustees for the charity and the residuary legatee, plaintiff and appellant here. It is claimed in her behalf that certain findings of fact made by the trial judge are not supported by the evidence, and that the conclusions of law attached do not follow the findings.

The most important matter, therefore, which is first to be considered and determined, is what the amended probate court decree does declare as to certain matters. The appellant contends that the third finding of fact, made by the trial court, is not sustained by the language of the amended probate court decree of distribution. It is said that the decree does not affix any value to the distributable assets at the date of its entry, and that the finding assumes that it does fix such value, and therefore that such finding is erroneous. The finding is as follows: ''The value of the distributable assets of the estate at the date of the amended decree, May 22, 1882, estimating the value of the theater property at $120,000, at which sum it had been appraised in the probate court on the fifth day of June, 1876, was $150,492, less the amount of the unpaid mortgage of $37,500, referred to in the decree,—the remainder being $112,992, of which one-third is $37,664.'' The decree referred to reads thus: ''To the trustees and their successors hereinabove named is hereby distributed the legal title to an undivided interest in the California Theater property, equal to one-third (⅓) of the distributable estate of said testator, that is to say, equal to one-third of the aggregated value of all the six items hereinafter specified as the distributable

assets of said estate. . . . . The distributable assets of the estate of said testator, one-third of which is subject to the charitable uses, are as follows, viz.: (1) Cash heretofore paid to legatees amounting to $8,912.02. (2) Cash distributed to trustees, $6,420.90. (3) The house and lot on Bush street, appraised, $11,500. (4) The personal property in said house, appraised at $3,659.50, being all the personal property mentioned in the inventory, excepting mining stock, and the $60 in money. (5) One hundred and fifty shares of stock in the Scorpion Silver Mining Company. (6) The California Theater property, inventoried and appraised on the fifth day of June, 1876, as of the value of $120,000, and which said theater property is subject to the said mortgage held by said Frank H. Woods.'' This mortgage was in the sum of $37,500. From the original probate court decree and the amended decree, from which the quotation is taken, it is easily perceived that, by direction of the supreme court in the case heretofore alluded to, the probate court was proceeding to carry out the views of the appellate tribunal in fixing the share or proportion of the California Theater property which would go to the trustees for the charity; and, inasmuch as the theater property was all that was left of the estate in their hands, in order to determine what that proportion was, it was deemed necessary to enumerate certain distributable assets that had passed from the hands of the trustees to those entitled thereto, and of which the charity had no benefit, and the theater property. In this enumeration the theater property was stated to have been appraised at $120,000, and it was also stated that it was subject to a mortgage of $37,500. The decree does fix the values of various items of distributable property, and whether the values so fixed are upon a right basis or not, as the probate court fixed the value of that property at its appraised value, which is contrary to both the statute and the decision of the supreme court, which the lower tribunal was then carrying out (Code Civ. Proc., secs. 1445, 1451; Estate of Hinckley, 58 Cal. 517), it must stand if it is a decree of distribution at all, as it is not appealed from, and is in full force and effect. This part of the decree was for the purpose of determining what the distributable assets then were out of which the trust was to be awarded an interest in the theater property, equal to one-third of the distributable assets,

whatever they might be. This amended decree did undertake to vest in the trustees for the charity a definite fractional interest that was fixed as to value in the theater property. It did nothing more than to follow the supreme court in its directions, and distributed to the charity an interest in the theater property which was all that then remained in the hands of the trustees, under the will of Hinckley, of the estate, equivalent to one-third of the whole of the then known items of the distributable assets of the estate as of that date, which was then positively known or declared in the decree. And a specific value was given of that share of the whole distributable assets. By making an arithmetical calculation, based on the language of the decree, it appears that the whole value placed on the distributable assets was $150,492, less the mortgage of $37,500, all debts and liabilities and costs of administration having then been paid, and the net result is that the distributable assets was then the amount of $112,992. Of that, according to the decree, which seems to have followed the decision of the appellate court (58 Cal. 516), the trust was entitled to $37,664; and since there was no distributable assets to pay it out of except the theater property, there was given to the charity a legal interest in the theater property equal to one-third of the whole of the distributable assets ascertained by the decree. The charity from thenceforth owned 37,664/120,-000 of the theater property, subject to the payment of its share of the mortgage; for, after distribution, the interest of the charity was not subject to any future costs or liabilities which might be incurred by the trustees, not growing out of the encumbrance or mortgage.

The income of the theater property was charged by the final decree with the payment of the twelve $3,000 legacies, and what was left of that charity was entitled to 37,664/120,000 thereof. How, then, is the present accounting to be stated between the parties thereto? It appears that the theater property afterward, by consent of all parties, was sold for $126,-000. 37,664/120,000 of this sum, less the amount paid out for the mortgage debt and interest, belonged to the charity, Amount received from increase of the property was $115,-416.67. From this sum the legacies were to be paid before any division between the parties hereto. That sum is $36,921.85, according to finding 6. The item of taxes on mortgage, if

payable by the estate at all, was payable out of the interest of each party, on the basis of his proportional interest; and it does not seem to be questioned that it was payable out of the interest of some one, a party here, and not the mortgagee. The Scorpion stock assessment paid was, of course, chargeable against the share of the residuary legatee. From the finding we should judge that the $500 fee paid Mr. Baldwin for litigation about the mortgage was payable out of the interest of both parties, in proportion to their share in the theater property. The balance expended by the trustees seems to have been, according to the record, $60,628.50, which the trial court charged wholly against the gross income, $115,416.67. It does not appear what this sum of $60,628.50 was paid out for, except $100 mentioned in findings 6 and 7, and $5,850 (erroneously added up as $5,000), mentioned in finding 7; so it will be presumed that all of that sum, except $5,950, is chargeable, as allowed, to the entire gross receipts. But we cannot perceive how any party to this proceeding except the charity is chargeable with this last sum. The money was not for the costs of administration or debts, but for counsel fees to those employed by the trustees of the charity to litigate their side of the controversy, and to get all that was possible from the residuary legatee for the benefit of the charity. The charity was the real party in interest, and should pay its own attorney's fees. It will thus be seen that finding 5, where it assumes the balance on hand for division to be $95,157.10, and the second, third, fourth and fifth conclusions of law are erroneous. The judgment should therefore be reversed, and we so advise.

I concur: Fitzgerald, C.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment is reversed.